UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

Carlton Rambert,

                              Plaintiff,

       -against-

Silvercup Scaffolding I LLC, GWT Enterprises, Inc.,
Urban Umbrella aka Urban Umbrella Scaffolding,
Juan Milan Carlos, Nicole Doe, Sam Doe, and
Yoely Doe,

                           Defendants.
_____x

Civil Case No.   23cv437

**COMPLAINT**

Jury Trial Demanded

       Plaintiff Carlton Rambert ("Plaintiff" or "Rambert") by and through his attorneys Nisar Law Group, PC alleges against Defendants Silvercup Scaffolding I LLC ("Silvercup"), GWT Enterprises, Inc. ("GWT"), Urban Umbrella aka Urban Umbrella Scaffolding (Urban Umbrella), Juan Milan Carlos ("Milan"), Nicole Doe ("Nicole"), Sam Doe ("Sam"), and Yoely Doe ("Yoely") as follows:

<u>NATURE OF THE ACTION</u>

1.    Plaintiff was an employee of Silvercup and/or GWT, subcontractors of Urban Umbrella from on or about January 1, 2021 to on or about June, 2022.  At all relevant times, Plaintiff was employed as a scaffolding construction laborer for Silvercup / GWT at worksites maintained by Urban Umbrella.  At all relevant times, Plaintiff was misclassified as an independent contractor and was not paid overtime wages in violation of the Fair Labor Standards Act 29 USC 201 et seq. and New York Labor Law §650 et seq. and NYCRR §142 et seq.  Corporate Defendants Silvercup/ GWT / Urban Umbrella jointly and severally failed to pay Plaintiff at one and one half (1.5) times Plaintiff's regular rate of $32 per hour for all of Plaintiff's hours worked beyond forty (40) hours

in a work week.  At all relevant times, Plaintiff regularly worked approximately 50 hours per week with some weeks totaling up to 80 hours per week.   Numerous times during Plaintiff's employment, Defendants Silvercup / GWT issued pay checks that were returned for insufficient funds.  Whenever Plaintiff demanded payment of the returned pay checks to Defendant Yeoly, the payroll manager, Plaintiff was threatened with termination from his employment.  Only after Plaintiff complained, Defendants Silvercup/GWT/Yeoly made delayed payments of approximately 2 weeks or more on Plaintiff's paychecks.  Corporate defendants jointly and severally, further failed to provide Plaintiff with proper notice of his lawful wages and accurate and proper wage statements in violation of NYLL §195.  Plaintiff seeks recovery of his unpaid overtime wages, delayed pay liquidated damages pursuant to NYLL §191, §198, back pay, liquidated damages, compensatory and punitive damages pursuant to FLSA §215 et seq., attorneys fees, costs and pre and post judgment interest.

2.      During most of Plaintiff's employment, Plaintiff was verbally harassed by Defendant Milan, the foreman at Urban Umbrella worksites, in front of other employees by repeatedly calling Plaintiff a "nigger" ("N word") to demean, humiliate and oppress Plaintiff.  Defendant Milan further placed Plaintiff and other employees in physical danger by conducting his instructional meetings at the beginning of the workday in Spanish and failing and refusing to provide the same instructions to Plaintiff in his native English language.  Because Plaintiff and his co-workers worked with heavy scaffolding materials and equipment as a team, failing to provide Plaintiff with safety and proper installation instructions not only set up Plaintiff to fail but placed the entire work team in physical danger.  Plaintiff repeatedly told Defendant Milan to cease referring to him as the N word and to provide instructions in English which Defendant Milan completely ignored. Instead, Defendant Milan continued his unlawful and dangerous conduct. Plaintiff reported the

incidents multiple times to supervisors Sam, Nicole and Yoely.  Based upon information and belief, Sam and Yoely were employees of Silvercup and Nicole was an employee of Urban Umbrella.   Sam and Nicole who were also supervisors of Defendant Milan, knowingly and willfully failed to intervene, stop, or otherwise correct Defendant Milan's unlawful and dangerous conduct against Plaintiff.  Instead, Sam and Nicole retaliated against Plaintiff for complaining about Milan by sending Plaintiff home before the end of his workshift to deprive him of a full day's wages, withheld work assignments and ultimately terminated Plaintiff, in close proximity after his complaints about Defendant Milan.  But for Plaintiff's African American race, he would not have been relentlessly harassed with the N word, placed in an abusive and hostile work environment, retaliated against pre and post termination and ultimately terminated.  Defendants therefore are liable for creating and maintaining a hostile work environment, retaliation, and wrongful termination based on Plaintiff's race pursuant to 42 USC §1981, Title VII of the Civil Rights Act of  1964, 42 USC §2000e-2 et seq, and NYS HRL §296 et seq.  Plaintiff seeks back pay, compensatory and punitive damages including but not limited to general mental anguish or emotional distress damages, attorneys fees and costs permitted by these statutes

## JURISDICTION

3.      This Court has original jurisdiction over this action pursuant to 28 USC §1331, §1337, Fair Labor Standards Act ("FLSA") 29 USC §201 et seq. and 42 USC §1981 et seq.

4.      This Court has supplemental jurisdiction over the New York state law claims under the 28 USC  §1367(a)

5.      Based upon information and belief, at all relevant times corporate Defendants' respective gross annual revenue was over $500,000 and were engaged in interstate commerce within the meaning of the FLSA which requires: (a) employees engaged in commerce or in the production of

goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (b) had an annual gross volume of sales of not less than $500,000.00.

6.      Based upon information and belief, Silvercup rented and sold "scaffolding products. From scaffolds to van racks" according to its website www.silvercupscaffolding.com.

7.      Based upon information and belief, Sivercup's gross annual revenue from renting and selling products that have been moved in or produced for commerce by any person exceeded $500,000.

8.      Based upon information and belief, Urban Umbrella is a corporation with its principal office located at 20 Harrison Street, New York, NY and provides scaffolding products and services to businesses in the states of: New York, New York County, Florida (FL), Tennessee (TN) and Texas (TX).

9.      Based upon information and belief, Urban Umbrella is a scaffolding company that subcontracts its scaffolding work to Silvercup and/or GWT and utlized their respective manufactured scaffolding products and equipment that were transported and used in interstate commerce.

10.     Plaintiff worked at Urban Umbrella worksites as a laborer and worked with its and/or Silvercup's construction goods or materials that were manufactured and transported in interstate commerce.

11.     The FLSA 29 USC §201 et seq. and 42 USC §1981 confer original federal question jurisdiction on this court as they are United States Statutes.

12.     Venue in this district is proper under 28 USC §1391 because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

13.     Plaintiff has filed a claim with the Equal Employment Opportunity Commission on or about January 13, 2023.  Upon obtaining a right to sue letter, Plaintiff will amend this Complaint to add claims under Title VII of the Civil Rights Act of  1964, 42 USC §2000e-2 et seq. ("Title VII") for discriminatory and retaliatory discharge, retaliation for protected activities and creating and maintaining a hostile work environment for Plaintiff based on his race.

<u>STATEMENT OF FACTS</u>

<u>The Parties:</u>

<u>Plaintiff</u>:

14.     Plaintiff is an African American ("AA" or "black") man, a citizen of the United States. Based upon information and belief, during the relevant times of his employment with corporate Defendants, Plaintiff was the sole African American or black scaffolding construction employee.

15.     At all relevant times to date, Plaintiff was a resident of West New York, New Jersey.

16.     Plaintiff worked for Silvercup / GWT / Urban Umbrella from on or about March 2021 through on or about June 15, 2022 as a scaffolding construction worker or manual laborer within the meaning of the FLSA and NYLL.  At all relevant times of Plaintiff's employment, he commuted to work to Urban Umbrella work sites located throughout New York, New York County ("NYC" or "Manhattan").

17.     Prior to working for corporate defendants, Plaintiff had approximately four (4) years of scaffolding construction experience.

**<u>Defendants</u>:**

18.     Based upon information and belief Defendant Silvercup is a New York State Limited Liability Company with its principal office located at 29 Lorimer Street, Brooklyn, NY and provides construction and scaffolding services to clients in the NYC area.  Based upon information

5

and belief, Silvercup sells scaffolding products "From scaffolds to van racks, whatever you need, we have it" according to its website, silverscaffolding.com/#services

19.    Based upon information and belief, Defendant GWT is a New York State Corporation with its principal office located at 177 Concord Street, Brooklyn, NY and provides construction contracting and scaffolding services to clients in the NYC area.

20.    Plaintiff's paychecks at various times were issued by Silvercup or GWT.  However, at all relevant times, Plaintiff physically picked up his pay check at Silvercup's office located on Lorimer Street in Brooklyn.

21.    Based upon information and belief, Urban Umbrella aka Urban Umbrella Scaffolding ("Urban Umbrella") is a corporation with its principal office located at 20 Harrison Street, New York, NY 10013 and does business in NYC, FL, TN and TX.

22.    Based upon information and belief, during the relevant time period of Plaintiff's employment, Urban Umbrella subcontracted scaffolding work to Silvercup and/or GWT to avoid paying employees proper regular and overtime compensation to increase its profits.

23.    Based upon information and belief, the last names or the legal names of managers and supervisors were withheld or not provided to Plaintiff in order to evade individual liability under state and federal labor laws.

24.    Based upon information and belief, during the relevant time period of Plaintiff's employment Defendant Nicole was Plaintiff's supervisor and an employee of Urban Umbrella.  At all relevant time periods of Plaintiff's employment, Defendant Nicole had the authority to hire, fire, discipline, schedule work, set wages, pay wages and control over all other terms and conditions of Plaintiff's and other employees' employment.

25.    Based upon information and belief, Defendant Sam was an employee of Silvercup / GWT and was the project manager and also Plaintiff's supervisor during the relevant period of Plaintiff's employment.  Based upon information and belief, Sam had the authority to hire, fire, discipline, set wages, schedule work, authorize payment of wages and control over all other terms and conditions of Plaintiff's and other employees' employment Based upon information and belief, Defendant Sam was an employee of Silvercup / GWT and was general manager and/or Plaintiff's supervisor during the relevant period of Plaintiff's employment.

26.    Based upon information and belief, Yoely was an employee of GWT / Silvercup.  During the relevant time period, Defendant Yoely was Plaintiff's payroll manager and had the authority to hire, fire, discipline, set wages, hours, maintain time records of Plaintiff and other employees and controlled the payment of wages to Plaintiff.

27.    At various times throughout Plaintiff's employment Yoely issued numerous paychecks to Plaintiff that were returned for insufficient funds.  When Plaintiff demanded payment of his wages, Yoely threatened to have him terminated from his employment for contacting him about the returned paychecks.

28.    Only after Plaintiff demanded payment of his wages, Yoely paid Plaintiff's wages approximately 2 weeks or more weeks later.

29.    Whenever Plaintiff complained to Yoely and/or Sam about not receiving overtime wages for his hours worked beyond 40 hours in a workweek Plaintiff was told he was not entitled to overtime wages as an independent contractor and denied his overtime wages.

30.    The paychecks that were returned for insufficient funds occurred during on or about April 2021 through on or about December 2021.  The amounts of the checks included but were not limited to: approximately $910, $941, $1,050 and $1,854.

31.     Defendants failed to pay Plaintiff his wages for his hours worked during the period on or about May 29 through June 15, 2023.

32.     Based upon information and belief, Defendants Sam and Nicole had further authority to set employment policies concerning the terms and conditions of employment of Plaintiff and other employees.

33.     Plaintiff was scheduled to work at Urban Umbrella construction sites that were mostly located in Manhattan, supervised by Sam and /or Nicole.

34.     Based upon information and belief, Juan Milan Carlos ("Milan") was an employee or Silvercup / GWT and was the foreman who directly supervised Plaintiff's work at Urban Umbrella job sites.

35.     Based upon information and belief, Sam and Nicole both had managerial authority over Defendant Milan at all relevant times of Plaintiff's employment.

36.     Throughout the period of Plaintiff's employment Defendant Milan regularly, repeatedly, maliciously and relentlessly referred to Plaintiff as a nigger ("N word") throughout the work day in front of other employees at least one workday in a workweek.  Defendant Milan also repeatedly and rhetorically asked Plaintiff, "why can't I use the word N word" as he would say the N word.

37.     Defendant Milan was hateful and obsessed with using the N word to humiliate and oppress Plaintiff in front of his co-workers and other employees of other subcontractors at Urban Umbrella job sites.

38.     At no relevant time did Plaintiff invite or provoke Defendant Milan to use the N word.

39.     Defendant Milan also encouraged other non-black employees at Urban Umbrella to refer to Plaintiff as the N word.  During some workweeks, Defendant Milan targeted his racist verbal attacks against Plaintiff on multiple workdays throughout the work day.   Despite Plaintiff's

repeated and unmistakable requests for Defendant Milan to stop calling him the N word, Defendant Milan became hatefully obsessed with the use of the N word and these racist verbal attacks against Plaintiff were unrelenting.

40.     Based upon information and belief, Defendant Nicole and Defendant Milan had a personal friendship or relationship outside of work that biased her conduct against Plaintiff whenever Plaintiff complained about Defendant Milan's racist verbal attacks against him using the N word

Defendants' Misclassification of Plaintiff as an independent contractor

41.     At all relevant times of Plaintiff's employment, Plaintiff was a manual laborer within the meaning of the FLSA and NYLL.  Plaintiff's work duties required physical labor at all relevant times throughout the workday, to work with his team to construct scaffolding at work sites throughout NYC.

42.     At no relevant time of Plaintiff's employment could Plaintiff have been classified as an independent contractor within the meaning of FLSA, NYLL and respective rules and regulations.

43.     An independent contractor typically controls his hours of work, scheduling work, works without supervision and generally controls the terms and conditions of his employment.  To the contrary, Plaintiff's hours of work, scheduling and all other terms and conditions of employment were controlled by defendants jointly and Plaintiff's daily work was directly supervised by his foreman Defendant Milan.

44.     At no relevant time was Plaintiff an exempt employee within the meaning of FLSA, NYLL and respective rules and regulations.   Plaintiff was not at any relevant time an executive, administrative, highly compensated or professional employee who are exempt from overtime provisions of FLSA and NYLL, rules and regulations.

45.     In addition to the misclassification of Plaintiff as an independent contractor, Defendants regularly manipulated Plaintiff's time records to reduce their compensation for Plaintiff's hours of work.  On at least one occasion, Plaintiff inquired with Payroll manager Yoely about his hours that were reduced by one hour from the time that Plaintiff submitted to which Yoely replied, "Being on time is not the point, starting to work on time is."  This statement acknowledged that Plaintiff came to work on time but the employer did not want to pay for that one hour of work.

46.     Based upon information and belief, an office worker named Kenneth assisted the payroll office at Silvercup with maintaining employee time records including records for Plaintiff.

47.     On numerous occasions during on or about 2021 and 2022, Plaintiff complained to Kenneth that the hours the office submitted for payroll were inconsistent with the hours Plaintiff reported and requested that Kenneth correct these incorrect hours.  All of these complaints about Plaintiff's time records were ignored, and none were corrected.

48.     Accordingly, Defendants Silvercup and/or GWT and/or Urban Umbrella misclassified Plaintiff as an independent contractor or exempt employee and failed to pay Plaintiff for all of his overtime wages at 1.5 times his regular rate of $32 totaling approximately $48 per hour for all of his hours worked after 40 hours in one work week.

49.     During Plaintiff's employment, he regularly worked approximately 50 hours per week and some weeks his hours totaled up to approximately 80 hours per week.

50.     Plaintiff was not paid his overtime wage of $48 per hour for his actual hours worked beyond 40 hours in a week at any relevant time.

51.     Defendant's willfully and knowingly misclassified Plaintiff as an independent contractor to avoid paying Plaintiff his overtime wages for his hours worked beyond 40 hours in a workweek.

52.     During the relevant times of Plaintiff's employment, all corporate Defendants knowingly and willfully issued pay checks to Plaintiff that were returned for insufficient funds including but not limited to: on or about April 2021 through December 2021 in the check amounts of approximately $910, $941, $1,050 and $1,854.

53.     When Plaintiff called the payroll manager Yoely to demand payment, Yoely told Plaintiff to stop calling him about his paychecks and threatened to terminate him from his employment.

54.     Defendants Urban Umbrella, Silvercup, GWT, Sam, Nicole, Milan and Yoely are joint employers within the meaning of FLSA and NYLL and are thus jointly and severally liable for Plaintiff's uncompensated overtime wages and 100% of those damages as liquidated damages plus pre and post judgment interest and attorneys fees and costs pursuant to FLSA and NYLL.

55.     Defendants Urban Umbrella, Silvercup, GWT, Sam, Nicole, Milan and Yoely willfully failed to provide Plaintiff with proper wage statements as an employee with proper tax and unemployment insurance deductions.

56.     All corporate Defendants willfully failed to provide Plaintiff with unemployment insurance benefits in violation of New York State Unemployment Insurance law and regulations.

57.     All corporate Defendants willfully failed to provide Plaintiff with proper wage notice acknowledgments disclosing including but not limited to the name and address of his employer, his regular and over time wage rates in order to conceal from Plaintiff his right to overtime wage compensation and his right to complain to the New York State Department of Labor concerning his wages.

58.     Defendants Urban Umbrella, Silvercup, GWT, Sam, Nicole, Milan and Yoely are jointly and severally liable to Plaintiff for failure to provide Plaintiff with a roll over or compensation of his unused paid sick hours up to 40 hours annually in violation of New York City Sick Leave Law.

59.     Defendants Urban Umbrella, Silvercup, GWT, Sam, Nicole, Milan and Yoely are jointly and severally liable for having failed to provide Plaintiff with proper wage statements reflecting his accrued, rolled over and/or used sick hours pursuant to New York City Sick Leave Law.

60.     Pursuant to New York City Sick Leave Law, Plaintiff is owed approximately 80 hours of accrued and unused sick hours and 100% of that amount in liquidated damages.

61.     Plaintiff is also owed in an amount to be determined at trial but not less than approximately 100 hours of regular and overtime wages that were not paid to date for his actual hours worked during the period of on or about May 29, 2022 through June 15, 2022.

All named Defendants' joint and several liability to Plaintiff for hostile work environment, pre and post termination retaliation, and wrongful termination based on Plaintiff's African American race.

62.     Plaintiff is within a protected class of persons based on his African American race within the meaning of 42 USC §1981, Title VII and NYS HRL.

63.     On or about mid 2021, Defendant Milan began referring to Plaintiff as the N word approximately once per workweek, multiple times during the day and some weeks the N word was used by Defendant Milan multiple times during the day on multiple days against Plaintiff.

64.     Plaintiff directly requested that Defendant Milan stop using the N word against Plaintiff. Notwithstanding,   Defendant Milan relentlessly continued to regularly and relentlessly call Plaintiff the N word at Urban Umbrella job sites in front of other employees.

65.     As alleged throughout this complaint, Defendant Milan regularly left Plaintiff out of instructional meetings at the beginning of the work day by providing safety and scaffolding assembly instructions to employees in Plaintiff's work group in Spanish only and refusing to provide the same instructions to Plaintiff in his native English language even when Plaintiff requested instructions in English.

66.     Accordingly, Defendant Milan set Plaintiff up to fail at his work duties and placed Plaintiff and his entire group who worked with heavy scaffolding products and equipment in physical danger.

67.     Plaintiff reported these incidents of unlawful and dangerous conduct by Defendant Milan face to face to his supervisors Nicole and/or Sam numerous times.

68.     On numerous occasions, Defendant Nicole witnessed Defendant Milan refer to Plaintiff as the N word.

69.     On or about June 14, 2022, Plaintiff complained to Defendant Nicole that Defendant Milan would not stop calling him the N word to which Defendant Nicole replied, "I know, give him (Milan) some time, I'll talk to him."

70.     On or about June 14, 2022, Plaintiff complained to Defendant Sam about not being paid his overtime wages and that Defendant Milan would not cease verbally attacking him with the N word.  Defendant Sam replied, "I'll look into it" which implied that Defendant Sam ignored all of Plaintiff's previous complaints about overtime wages, the payroll office's incorrect time keeping records for Plaintiff, his paychecks returned for insufficient funds and complaints about Defendant Milan's relentless racist verbal attacks on Plaintiff using the N word.

71.     Other Urban Umbrella supervisors Jose and Felix each were present on several occasions when Defendant Milan verbally attacked Plaintiff by relentlessly referring to Plaintiff as the N word.  These Urban Umbrella supervisors acknowledged to Plaintiff that they witnessed Defendant Milan calling him the N word.  However, both supervisors failed to stop the recurrence of these incidents and did not intervene when they witnessed these verbal racial attacks.

72.     All of the aforementioned supervisors failed to stop or intervene against Defendant Milan's racist conduct.  Instead, Defendants Nicole and Sam sided with Defendant Milan and retaliated

against Plaintiff for complaining about Defendant Milan's repeated and relentless use of the N word against Plaintiff. Defendants Nicole and Sam would withhold work assignments from Plaintiff in close proximity from the time Plaintiff complained about Defendant Milan, at times sending Plaintiff home the same day he complained of Defendant Milan's racial harassment.

73.      Ultimately, Defendants terminated Plaintiff from his employment on or about June 15, 2022 in retaliation for the numerous complaints he made about Defendant Milan's racial harassment of Plaintiff and inciting other employees to call Plaintiff the N word.

74.      On or about May 15, 2022, Plaintiff complained to Sam and Yoely that his Overtime wages were not being paid and that Defendant Milan would not stop with his verbal attacks against him referring to him the N word.

75.      As alleged throughout this complaint, Shortly after this May 15, 2022 complaint to Sam and Yoely; and his complaint to Nicole on or about June 14, 2022; and his complaint to Sam on or about June 14, 2022 about his overtime wages and about Defendant Milan's racist verbal attacks against him, Plaintiff was terminated from his employment directly by Nicole and Sam who each told Plaintiff to go home on or about June 15, 2022.

76.      After his termination on or about June 15, 2022, Plaintiff could not find comparable work in construction. On or about July 2022, Plaintiff contacted Sam by text requesting that he be re-hired. Sam replied that Silvercup had no open positions and that Urban Umbrella did not want him back at its worksites.

77.      Based upon information and belief, Silvercup / GWT/ Urban Umbrella and its respective employees Sam, Milan and Nicole defamed Plaintiff and placed him in a false light as an "agitated" employee or "angry or aggressive black man" because he complained about Defendant Milan's

use of the N word against Plaintiff.  This mischaracterization of Plaintiff by Defendants prevented Plaintiff from obtaining comparable work with other employers.

78.     Based upon information and belief, Defendants Sam, Nicole and Milan conspired to retaliate against and ultimately terminate Plaintiff for making complaints about discrimination and unlawful workplace conduct by Defendant Milan.

79.     Specifically, since on or about mid 2021, Milan regularly and relentlessly called Plaintiff the N word in front of other employees at client work sites despite repeated and direct requests by Plaintiff to stop.   Milan's regular use of the N Word in front of Plaintiff and other employees was to demean, oppress and humiliate Plaintiff in front of other employees.

80.     Milan ignored all of Plaintiff's requests for him to stop referring to him as the N Word.

81.     At least once a week, multiple times during a work day, Milan would refer to Plaintiff as the N Word.  Some weeks Milan would refer to Plaintiff as the N word multiple times a day over multiple days in a work week.

82.     Without provocation or invitation, Defendant Milan regularly and relentlessly asked Plaintiff "why can't I use the N word" as he freely and openly said the N word in front of Plaintiff and other employees in order to establish his white supremacy and managerial power over Plaintiff and that he would suffer no consequences for his unlawful and racist conduct.  Defendants Sam and Nicole who witnessed Defendant Milan's racist verbal attacks perpetuated this racially oppressive work environment by failing to correct Defendant Milan's racist conduct and reprimanding Plaintiff instead and withholding work and overtime wages from Plaintiff.   This was precisely the vestiges of colonialism and involuntary servitud that 42 USC §1981 and Title VII of the Civil Rights Act of 1964 was purposed to remedy or correct.

83.   Defendant Milan repeatedly encouraged and coerced other employees to call Plaintiff the N Word by saying, "go ahead, call him a N Word" in the presence of Plaintiff.

84.   Defendant was obsessed with the use of the N Word with Plaintiff.

85.   At the start of Plaintiff's employment, he was bright and eager to work. After Defendant Milan's repeated and relentless barrage of the N word, open displays of racial animus against Plaintiff and efforts to influence other employees to do the same during 2021 and 2022, Plaintiff became anxious and nervous about his physical safety while working with construction equipment and parts that required team work.

86.   Plaintiff's wife, family and friends also saw a positive young man become anxious, nervous, suffer from sleeplessness and general loss of enjoyment of life.

87.   As alleged throughout this Complaint, Defendant Milan regularly excluded Plaintiff from instructional meetings at the beginning of work at jobsites. Defendant Milan gave work instructions to employees in the Spanish language only and willfully and knowingly refused to provide instructions in English to Plaintiff which set up Plaintiff to potentially fail at his tasks and placed Plaintiff and others in physical danger as they worked as a team to construct scaffolding with heavy scaffolding equipment.

88.   During 2021 and 2022, Plaintiff made multiple face to face complaints to Defendants Sam and Nicole about Defendant Milan's openly racist and unlawful conduct. Neither Sam nor Nicole who were in a position of authority addressed or stopped Defendant Milan's racist conduct towards Plaintiff. Instead Sam and Nicole retaliated against Plaintiff for complaints about Milan by withholding work assignments, sending Plaintiff home and ultimately terminated him.

89.   Based upon information and belief, Nicole and Milan had a personal friendship or relationship outside of their employment.

90.     On or about 2022, Plaintiff confronted Milan to stop referring to him as the N word and Milan instigated an argument with Plaintiff in front of Defendant Nicole.  Based upon information and belief, due to her personal relationship with Milan, Nicole sided with Milan, retaliated against Plaintiff and ordered Plaintiff to go home early to prevent Plaintiff from earning his full daily wage.

91.     On or about June 15, 2022, Plaintiff was terminated or told to go home by Defendants Sam and Nicole based on a pretext that Defendant Milan had concocted about Plaintiff having insulted a building worker at the job site that day.

92.     Plaintiff did not directly address or insult a building worker on or about June 15, 2022.

93.     Defendants were unable to articulate what Plaintiff was alleged to have stated to the subject building worker.

94.     On or about June 15, 2022, Plaintiff witnessed Defendant Milan speaking with a building worker whom Plaintiff had not seen before.  Thereafter, Defendant Nicole alleged that Plaintiff was "agitated" that day and sent him home.  Sam contacted Plaintiff after Nicole accused him of being agitated and also told Plaintiff to go home.

95.     Based upon information and belief, Defendants Sam and Nicole set up a pretext that Plaintiff was "agitated" to discharge Plaintiff.

96.     After June 15, 2022, Plaintiff suffered approximately two weeks without work because of Milan, Nicole and Sam's false accusations that Plaintiff insulted a building worker and was then terminated after the alleged incident.

97.     Several months after Plaintiff was terminated by Defendants, he was unable to obtain comparable employment.  In the past, Plaintiff did not experience going beyond a month without securing employment.  Plaintiff called Sam and told him about his inability to find other

employment and Sam responded, "no one wants to see you at any of our [Urban Umbrella] work sites."

98.    Based upon information and belief, on or about June 15, 2022, Defendants Nicole and Milan falsely told the building worker that Plaintiff offended him in order to have Plaintiff terminated for making complaints about Milan.

99.    Based upon information and belief, on or about June 15, 2022, Defendant Nicole and Milan falsely stated to Sam that Plaintiff was "agitated" that day to cast the racist aspersion of an "angry black man" trope on Plaintiff to have Plaintiff terminated from his employment.

100.    Based upon information and belief, Defendants Sam, Nicole and Milan perpetuated the racist trope that Plaintiff was an "agitated" and "angry black man" to potential employers that prevented Plaintiff from obtaining employment with other employers.

101.    Based on the foregoing, Defendants wrongfully terminated Plaintiff, subjected Plaintiff to a hostile work environment, pre and post employment retaliation for complaining about the terms and conditions of his employment against Plaintiff based on his race as an African American in violation of 42 USC §1981, Title VII and NYS HRL.

## AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA") 29 USC §207
### DEFENDANTS' FAILURE TO PAY OVERTIME

102.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

103.    As alleged throughout this complaint, Defendants willfully employed Plaintiff for workweeks longer than forty (40) hours and failed to compensate Plaintiff for his actual hours worked in excess of forty (40) hours per week at a rate of at least 1.5 times his regular wage rate of approximately $32 per hour totaling approximately $48 per hour during the relevant times of her employment.

104.    As alleged throughout this Complaint, Defendants failed to pay the proper overtime wages to Plaintiff for approximately 10 hours of overtime hours per week and 40 hours of overtime hours in certain weeks during the relevant time period of on or about March 2021 through on or about June 15, 2022 as required by the FLSA, 29 U.S.C. §207, and FLSA rules and regulations.

105.    Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA is a direct violation of the FLSA, 29 U.S.C. §207.

106.    Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. §255.

107.    Defendants' failure to comply with the FLSA has caused Plaintiff to suffer a loss of wages.

108.    Accordingly, Plaintiff seeks to recover his overtime underpayments, double or liquidated damages for the underpayment amounts to be determined at the time of trial, attorneys fees and costs, pre and post judgment interest pursuant to FLSA 29 USC §201 et seq.

### AS AND FOR A SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW, 22 NYCRR 142
### DEFENDANTS' FAILURE TO PAY OVERTIME

109.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

110.    As alleged throughout this complaint, Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

111.    As alleged throughout this complaint, Defendants failed to pay Plaintiff overtime wages for his actual hours worked in excess of forty (40) hours per week during the relevant time period of his employment from on or about March 2021 through on or about June 15, 2022 for working approximately 10 hours overtime per workweek and in certain workweeks 40 hours overtime.

112.    Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2 which was at one and one half times his regular rate of approximately $32 per hour totaling

approximately $48 per hour for all of Plaintiff's hours worked beyond 40 hours in each workweek during the relevant time period of Plaintiff's employment.

113.    Defendants' failure to comply with the NYLL overtime requirements has caused Plaintiff to suffer loss of wages and interest thereon.

114.    As alleged throughout this complaint, Defendants' failure to pay proper overtime wages was willful.

115.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid overtime wages in an amount to be determined at trial, plus an amount equal to 100% of Plaintiff's unpaid overtime wages in the form of liquidated damages, as well as attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

<strong><u>AS AND FOR A THIRD CAUSE OF ACTION</u><br>FREQUENCY OF WAGE PAYMENT CLAIM<br>PURSUANT TO NYLL §191, §198(1-a)</strong>

116.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

117.    NYLL 198(1-a) provides a private cause of action for a violation of NYLL §191.

118.    "underpayment" within the meaning of NYLL 198 (1-a) encompasses instances where the employer violates the frequency of payment requirements under NYLL §191(1)(a) but pays all wages due before the commencement of an action.  Accordingly, the liquidated damages remedy applies to the failure to pay wages on time or partial payment of wages.

119.    12 NYCRR §142-2.9 states, "[t]he …overtime wage provided by this Part shall be required for each week of work, regardless of the frequency of payment, whether the wage is on a commission, bonus…or any other basis."    Accordingly, Plaintiff was entitled to be paid his

overtime wages each work week regardless of whether or not they were paid on a commission basis only.

120.    During the workweeks that Plaintiff was paid with the employers' check that were returned for insufficient funds and after Plaintiff demanded payment, the employers made the wage payment approximately 2 or more weeks later, Plaintiff is entitled to delayed pay liquidated damages of 100% of those delayed weekly check amounts.  Those check amounts included but were not limited to: $910, $941, $1,050, and $1,854 during on or about April 2021 through December 2021.

121.    The purpose of NYLL §198 is to remedy an employee's loss of the use of money whether he/she is never paid, partially paid, or paid late.  Therefore a late payment of wages is an underpayment within the meaning of NYLL §198.  The purpose of NYLL §191 was to protect manual workers who are generally dependent on their wages for sustenance.

122.    NYLL §198 (1-a) states in pertinent part, "In any action instituted in the courts upon a wage claim by an employee…the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, and…an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety four of this article."

123.    As alleged throughout this Complaint, Defendants knowingly and numerous times, failed to timely pay Plaintiff  his weekly wages knowing Plaintiff was a manual laborer / employee and when Plaintiff demanded payment of his wages, Defendants threatened him with termination and eventually paid Plaintiff approximately 2 or more weeks after the demands.  Accordingly, Defendants are jointly and severally liable for 100% of all delayed of wage payments.

124.     During the relevant time periods, Plaintiff lost the benefit of his weekly wages each time they were paid late and incurred penalties and costs when his paychecks were returned for insufficient funds.

125.     At all relevant times, Defendants were aware or should have been aware that Plaintiff was a manual laborer and NYLL required that Plaintiff be paid on a weekly basis but Defendants willfully disregarded the NYLL and paid Plaintiff late after Defendants caused Plaintiff to incur costs and penalties for Defendants' checks that were returned for insufficient funds.

126.     Accordingly, Plaintiff should be awarded 100% liquidated damages pursuant to NYLL §198 (1-a) for delayed pay in addition to all other damages as set forth *supra* for Defendants' violation of NYLL §191 plus pre and post judgment interest, costs and attorneys fees.

<u>**AS AND FOR A FOURTH CAUSE OF ACTION**</u>
<u>**RETALIATION AGAINST PLAINTIFF IN VIOLATION OF FLSA §215**</u>

127.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

128.     Defendants violated the provisions of FLSA 29 USC §215 (a)(3) by discriminating against Plaintiff for exercising rights protected under the FLSA.

129.     As alleged throughout this Complaint Plaintiff verbally complained to Defendants about their payroll practices which were protected activity within the meaning of the FLSA.

130.     Specifically, Plaintiff complained numerous times to Yoely when corporate defendants issued him paychecks that were returned for insufficient funds during April through December 2021. Yoely threatened Plaintiff with termination if Plaintiff did not stop calling him to complain about these pay checks that were returned for insufficient funds.

131.     As alleged throughout this complaint, payroll office worker Kenneth submitted incorrect hours for Plaintiff's payroll. Plaintiff made numerous requests to Kenneth during on or about 2021 and 2022 to correct his time records as Kenneth's time submissions were inconsistent with

Plaintiff's recorded work day start and end times.

132.    On or about May 15, 2022, Plaintiff complaint to Yoely and Sam about not receiving his overtime pay and that Defendant Milan would not cease referring to him as the N word.  On or about June 15, 2022, Defendant Sam terminated Plaintiff along with Nicole who ordered Plaintiff to go home before the end of his shift.

133.    As alleged throughout this complaint, on or about June 14, 2022 Plaintiff complained to Nicole and Sam that Defendant Milan would not stop his verbal attacks by calling him the N word or asking Plaintiff without invitation or provocation "why can't I use the N word" as he stated the N word.  Defendant Nicole who had a personal relationship with Milan replied, "I know, give him [Milan] time, I will speak with him."  Plaintiff further complained to Nicole that he was sent home early every time he complained about Defendant Milan and prevented him from earning a full day's wages when Defendant Milan suffered no consequences whatsoever.  On or about June 15, 2022, Nicole and Sam retaliated against Plaintiff and each supervisor told Plaintiff to go home before the end of his work shift and terminated him from employment.

134.    Defendants violated FLSA §215 by retaliating against Plaintiff for engaging in his protected rights by threatening to terminate Plaintiff's employment for complaining about non payment of his overtime wages, reduction in his work hours for complaining about Defendant Milan's racist verbal attacks and his returned paychecks for insufficient funds. Defendants made delayed payments approximately 2 weeks or more on the returned paychecks only after Plaintiff complained.   After Plaintiff complained to Yoely, he was threatened with discharge for complaining about the returned paychecks for insufficient funds.

135.    As previously alleged in this complaint, all named Defendants are jointly and severally liable for having failed to compensate Plaintiff his regular and overtime wages for the work weeks

on or about May 29, 2022 through June 15, 2022 after Plaintiff's complaints to Sam, Nicole and

Yoely on or about June 14, 2022 about his unpaid overtime wages and about Milan's racist verbal

attacks against him.

136.    As a result of these violations by Defendants, Plaintiff is entitled to damages as set forth in

the FLSA 29 USC §215(a)(3) and attendant case law, including but not limited to back pay, front

pay, liquidated damages, compensatory, punitive damages and attorneys fees, costs and pre and

post judgment interest.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF THE NEW YORK LABOR LAW §215**

137.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

138.    As alleged throughout this complaint, by complaining of the non payment of overtime of

his wages, his reduction in hours of work after complaining about Defendant Milan's verbal racist

attacks, complaining about Defendants' incorrect time keeping records, and Defendants'

paychecks that were returned for insufficient funds, Plaintiff engaged in protected activity within

the meaning of NYLL §215(2).

139.    As alleged throughout this complaint, Defendants terminated Plaintiff on or about June 15,

2022 after Plaintiff's cumulative complaints throughout 2021 and 2022 and on or about June 14,

2022 about non payment of overtime, incorrect time records, reduction in hours for complaining

about Defendant Milan's racist verbal attacks and paychecks that were returned for insufficient

funds on at least 4 separate occasions which were complaints about Defendants' pay, scheduling

and time keeping practices.

140.    Defendants violated NYLL §215 by retaliating against Plaintiff as alleged throughout this

complaint, for engaging in protected rights / activities by threatening to terminate, reducing

Plaintiff's work hours and ultimately terminating Plaintiff on or about June 15, 2022 shortly after

the complaints were made by Plaintiff about Defendants' pay, reduction in work hours after complaining of racist verbal attacks by Defendant Milan, scheduling and time keeping practices.

141.    Accordingly, Plaintiff seeks back pay, front pay in lieu of reinstatement, liquidated damages, compensatory and punitive damages and attorneys fees, costs and pre and post judgment interest.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK LABOR LAW §195(1)**
**WAGE NOTICE REQUIREMENT**

142.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

143.    As set forth throughout this complaint NYLL 195(1) required Defendants to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

144.    Defendants intentionally failed to provide notice to Plaintiff in violation of NYLL §195 to conceal wage and hour claims against them.

145.    At the time of hire Defendants failed to provide notice to Plaintiff and Plaintiff was thereby damaged because he was not aware of his rights to overtime wages or that he could complain to the New York State Department of Labor.

146.    Due to Defendants' violations of NYLL, Plaintiff is entitled to recover from Defendants $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to NYLL. NYLL §198(1-b).

### AS AND FOR A SEVENTH CAUSE OF ACTION
**New York Labor Law (NYLL) § 195(3) – Failure to Provide Accurate Wage Statements**

147.     Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

148.     As alleged throughout this complaint, Defendants failed to provide Plaintiff with proper and accurate wage statements throughout her employment stating, including but not limited to:  all regular hours of work, her rate of pay, and the basis of pay, in violation of NYLL § 195(3).

149.     Defendants failed to maintain proper and accurate time records that accurately reflected Plaintiff's overtime hours and sick hours due to him as alleged throughout this Complaint.

150.     Plaintiff was damaged because he was not aware of her rights to minimum wage and overtime or her proper wage payments and was forced to suffer repeated underpayments of her wages.

151.     Due to Defendants' violations of the NYLL 195(3), Plaintiff is entitled to recover from Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL § 198 (1-d).

### AS AND FOR A EIGHTH CAUSE OF ACTION
**Compensation for accrued and unused sick hours pursuant to New York City Sick Leave Act pursuant to Title 20 of New York City Admin. Code §20 -911 et seq**

152.     Plaintiff repeats and re-alleges each and every previous allegation as if fully set forth herein.

153.     Effective on or about May 5, 2018, the New York City Sick Leave law required employers with up to 99 employees to provide paid 40 sick hours in calendar year and 56 paid sick hours if the employer employed 100 or more employees in the aggregate.

154.     Under NYC law employers were mandated to provide notice to employees of their rights

to these paid sick hours.

155.     Under NYC law, employers were mandated to record and provide to each employee, year to date accrued and used sick hours on each wage statement.

156.     Under NYC law, employers were required to roll over accrued and unused sick pay hours or compensate employees at their regular hourly wage rates for the unused sick pay hours.

157.     During all relevant times of her employment, Defendants' worksites were located in the NYC area covered and subjected to the NYC sick leave law.

158.     Defendants failed to provide notice to Plaintiff of his paid sick hours rights under NYC sick leave law yet knew at all relevant times that he was covered under NYC laws, rules and regulations.

159.     During all relevant time periods, Defendants failed to maintain and record Plaintiff's respective accrued and used sick hours on their wage statements.

160.     During all relevant time periods, Defendants willfully denied Plaintiff's unused sick hours compensation of approximately 80 hours (40 hours for each of the years 2021 and 2022) and did not roll over his unused sick hours or compensate him for those unused sick hours.

161.     Accordingly, Plaintiff seeks compensation for approximately 80 hours of unused sick hours during the relevant periods of employment, liquidated damages, pre and post judgment interest, costs and attorney fees.

**AS AND FOR A NINTH CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF 42 USC §1981**

162.     Plaintiff repeats and re-alleges each and every allegation previously set forth as if fully set forth herein.

163.     42 USC §1981(a) states in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right in ever State…to make and enforce contracts, to sue, be parties,

give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

164. A prima facie claim for wrongful termination, harassment and hostile work environment under 42 USC §1981 requires plaintiff to show: 1) he is a member of a protected class; and 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse action took place under circumstances giving rise to the inference of discrimination.

165. As alleged throughout this complaint, Plaintiff is an African American and is a member of a protected class within the meaning of 42 USC §1981.

166. As alleged throughout this complaint, Plaintiff was the sole African American employee in his work group during the relevant time period of Plaintiff's employment.

167. As set forth throughout this complaint, Plaintiff was qualified in his position as a scaffolding laborer with four (4) years of experience in scaffolding construction.

168. On or about June 15, 2022, Plaintiff was terminated from his employment which was an adverse action within the meaning of 42 USC §1981.

169. As alleged throughout this complaint, Plaintiff's termination was based on a pretext that he had verbally insulted a building worker at an Urban Umbrella worksite. However, Defendants could not articulate what Plaintiff stated that allegedly insulted a building worker whom Plaintiff had not previously known or met prior to the alleged incident on or about June 15, 2022.

170. Based upon information and belief, Defendants Milan, Nicole and Sam concocted a false pretext that Plaintiff insulted a building worker on or about June 15, 2022 in order to terminate Plaintiff for cause.

171.    As alleged throughout this complaint, on or about June 14, 2022, Plaintiff complained to Defendant Sam and Defendant Nicole that Defendant Milan would not cease referring to Plaintiff as the N word and that Plaintiff was still not paid his overtime wages.

172.    As alleged throughout this complaint since on or about mid 2021 through June 14, 2022, Plaintiff made repeated requests to Defendant Milan to stop referring to him as the N word and to stop asking "why can't I use the N word" as he used the N word.

173.    As alleged throughout this complaint, Plaintiff contemporaneously complained to Nicole and Sam that Defendant Milan would not stop verbally attacking him with the N word during 2021 and 2022.

174.    As alleged throughout this complaint, Defendant Nicole witnessed numerous incidents when Defendant Milan referred to Plaintiff as the N word and refused to intervene or stop Defendant Milan's unlawful conduct when she was in authority and in a position to correct Defendant Milan's unlawful behavior.

175.    Instead, on or about June 14, 2022 Plaintiff complained about Defendant Milan's verbal racist attacks to Nicole and Sam and in close temporal proximity to these complaints, both managers terminated Plaintiff on or about June 15, 2022 after sending Plaintiff home early and preventing Plaintiff from earning a full day's wage.

176.    But for Plaintiff's race, Plaintiff would not have been harassed and terminated from his employment.

177.    Accordingly, Plaintiff seeks back pay from the date of his wrongful termination on or about June 15, 2022, compensatory and punitive damages, attorneys fees and costs pursuant to 42 USC §1981 et seq.

**AS AND FOR A TENTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 USC §1981**

178.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

179.    Similar to a Title VII cause of action, to prevail on a hostile work environment claim under 42 USC §1981, a Plaintiff must show that 1) the harassment was severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and 2) a basis for the harassment to be imputed to the employer.

180.    As set forth throughout this Complaint, Plaintiff suffered adverse employment action taken by Defendants when they terminated him on or about June 15, 2022;  withheld work assignments from Plaintiff after making complaints about Defendant Milan's racist verbal attacks referring to Plaintiff as the N word; and sent home before the end of his work shift (reduction in work hours) on days that he complained about Defendant Milan's racist verbal attacks; and failed to pay Plaintiff any wages for the weeks that he worked on or about May 29, 2022 through June 15, 2022.

181.    As alleged throughout this complaint Defendant Milan's unprovoked and unwelcome racist verbal attacks referring to Plaintiff as the N word was pervasive as it occurred on at least one work day every week, repeatedly throughout a work day.  On some weeks, Defendant Milan's racist verbal attacks occurred over several days throughout each work day.

182.    As alleged throughout this Complaint, on a daily basis, Defendant Milan provided employees with safety and scaffolding assembly instructions at the beginning of the work day in the Spanish language only and even upon specific request by Plaintiff, Defendant Milan refused to provide the same instructions in Plaintiff's native English language.  This unlawful conduct not only set Plaintiff up to potentially fail at his task but also placed Plaintiff and his co-workers in physical danger as they worked as a team with heavy scaffolding materials and equipment.

183.   As alleged throughout this complaint, Plaintiff grew fearful for his physical safety and grew anxious, threatened, defeated, isolated and opressed based on Defendant Milan's racist and exclusionary conduct.

184.   Defendant Milan's racist animus and conduct toward Plaintiff created an abusive or hostile work environment for Plaintiff.

185.   Defendant Milan's racist conduct and supervisors Sam and Nicole's willful ignorance of Defendant Milan's racist and unlawful conduct would have deterred a reasonable and similarly situated employee from complaining to supervisors about racist mistreatment and abuse at Urban Umbrella work sites.

186.   Corporate defendants are vicariously liable for the misconduct of its employees or agents. Urban Umbrella is vicariously liable for its agents or subcontractors Silvercup GWT and its employee Nicole and Silvercup / GWT are vicariously liable for its employees Milan and Sam.

187.   Defendant Milan refused to cease his racist conduct even after Plaintiff told him that his use of the N word against Plaintiff was unprovoked and unwelcome and unmistakably told Defendant to stop referring to and using the N word against Plaintiff.

188.   As alleged throughout this complaint, Defendants Nicole and Sam and Urban Umbrella supervisors Jose and Felix who witnessed Defendant Milan's racist conduct towards Plaintiff refused to intervene or do anything to stop Defendant Milan's racist and unlawful conduct.

189.   An individual may be held liable under 42 USC §1981 if that individual was personally involved in the alleged deprivation.

190.   A supervisor is liable under 42 USC §1981 by directly participating in the conduct or by 1) failing to take corrective action; 2) creation of a policy or custom fostering the conduct; 3) grossly negligent supervision, or deliberate indifference to the rights of others.

191.   At all relevant times, Defendants Nicole and Sam were Plaintiff's and Defendant Milan's supervisor or manager and as alleged throughout this complaint, these individual Defendants failed to take corrective action against Defendant Milan and co-workers whom Defendant Milan encouraged to harass Plaintiff by referring to him as the N word.  Defendants Sam and Nicole thereby joined Defendant Milan in maintaining an abusive and hostile work environment for Plaintiff and are individually liable to Plaintiff for maintaining a hostile work environment.

192.   By ignoring Plaintiff's complaints and by siding with Defendant Milan and co-workers who discriminated against and harassed Plaintiff, Defendants displayed a deliberate indifference to the rights of Plaintiff to work in an environment free of racial abuse.

193.   As alleged throughout this complaint, by ignoring Plaintiff's complaints about discrimination against him by Defendant Milan who relentlessly called Plaintiff the N word that the Defendants Sam and Nicole witnessed first hand, Defendants Sam and Nicole were each derelict or grossly negligent in their duties as managers and willfully failed to take corrective measures such as to counsel employees and resolve hostile workplace issues directly.

194.   As alleged throughout this complaint, on or about June 14, 2022, Defendant Nicole stated to Plaintiff after he complained again about Defendant Milan's racist verbal attacks, "I know, give him [Milan] some time. I will talk to him."  This statement by Nicole acknowledged Milan's unlawful conduct and that throughout 2021 and 2022 she had not taken any corrective action as the supervisor for both Plaintiff and Milan.

195.   On or about June 14, 2022, Plaintiff complained to Defendant Sam about Defendant Milan's continuing and relentless racist verbal attacks and Sam replied, "I'll look into it" which was an admission that Sam ignored Plaintiff's previous complaints and willfully failed to take any corrective actions with Defendant Milan at any relevant time.

196.   The withholding of assignments, or assigning an excessive workload and reprimanding an employee for no reason, giving the employee a negative review as a result of discriminatory intent, because of his race, may be an adverse action.

197.   As alleged throughout this complaint, Plaintiff's supervisors Sam and Nicole sent Plaintiff home early without a reasonable basis as he was not the one accused of wronding and withheld job assignments to prevent Plaintiff from earning a living in close proximity to the time after Plaintiff complained about Defendant Milan's relentless use of the N word against him.

198.   As alleged throughout this complaint, Defendants Sam, Nicole and Milan falsely accused Plaintiff of insulting a building worker on or about June 15, 2022 as Plaintiff had not seen or met this building worker before this date.   Moreover, Defendants Sam, Nicole and Milan could not articulate what Plaintiff was alleged to have stated to the building worker.   Furthermore, neither Sam nor Nicole witnessed the alleged incident concerning the subject building worker. Notwithstanding, Sam and Nicole characterized Plaintiff as "agitated" on or about June 15, 2022 and terminated him from employment.

199.   Defendant Sam, Nicole and Milan are individually liable under 42 USC §1981 for having created and maintained this hostile work environment and willfully and knowingly failed to correct or counsel Defendant Milan's wrongful and discriminatory conduct toward Plaintiff.

200.   Accordingly, Plaintiff seeks back pay, compensatory and punitive damages and attorneys fees and costs pursuant to 42 USC §1981 et seq.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## PRE and POST TERMINATION RETALIATION IN VIOLATION OF 42 USC §1981

201.   Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

202.   Retaliation under 42 USC §1981 requires a showing that a complaint made for discrimination and the adverse employment action taken in retaliation by the employer is one that

would likely dissuade a reasonable employee from making or supporting a charge of discrimination.

203.   In order to prevail on a retaliation claim under 42 USC §1981, Plaintiff need not demonstrate the underlying discrimination and may set forth a prima facie claim based on the temporal proximity of the adverse action and the protected activity that Plaintiff engaged in.

204.   As alleged throughout this complaint Plaintiff engaged in protected activity each time he complained to his supervisors Nicole and Sam about Defendant Milan's racist verbal attacks against Plaintiff.  Moreover, supervisors Nicole and Sam witnessed Defendant Milan referring to Plaintiff as the N word and failed intervene, prevent or correct Defendant Milan's racist and unlawful conduct toward Plaintiff.  After Plaintiff's complaints, he was sent home before his shift ended, or had work assignments withheld from him and was ultimately terminated from his employment which were all adverse employment actions.

205.   As alleged throughout this complaint, on or about June 14, 2023, Plaintiff complained directly to Defendant Nicole that Defendant Milan would not stop his racist verbal attacks against Plaintiff by regularly and relentlessly calling Plaintiff the N word throughout the workdays.

206.   Defendant Nicole replied to Plaintiff, "I know, give him (Milan) some time, I'll talk to him."

207.   On or about June 15, 2023, Plaintiff witnessed Defendant Milan talking with Nicole at an Urban Umbrella worksite.  Shortly thereafter, Nicole told Plaintiff to go home early, preventing him from earning a full day's wage.  Thereafter, Sam confirmed to Plaintiff that he should go home.  After June 15, 2022, Plaintiff was not given any further work assignments.

208.   These supervisors stated that Plaintiff was the one who was "agitated" and that Plaintiff offended a building employee on or about June 2022 which perpetuated a racist trope that Plaintiff

was an "agitated" or angry or aggressive black man and not Defendant Milan who relentlessly verbally attacked Plaintiff without provocation or invitation in referring to him as the N word.

209.    Based upon information and belief, after Plaintiff was discharged, individual Defendants also misrepresented to other employees, potential employers that Plaintiff was "agitated" and that Urban Umbrella did not want to see Plaintiff at its work sites.

210.    At all relevant times, Defendants were aware that racial discrimination and use of the N word at client worksites was unlawful but permitted Defendant Milan to harass, demean, threaten, humiliate and oppress Plaintiff by referring to him as the N word in front of other employees.

211.    Defendant Milan's use of the N word was to oppress Plaintiff because he was African American and a showing by Defendant Milan that he intended to use white supremacist language such as the N word and his managerial status to control and oppress Plaintiff by referring to him as the N word in front of other workers and in front of his supervisors Nicole and Sam.  As alleged, Sam and Nicole neither imposed any adverse consequences nor took corrective measures of Defendant's racist and unlawful conduct.

212.    As alleged throughout this complaint, but for Plaintiff's African American race, Defendant Milan would not have created a hostile work environment and relentlessly harassed and oppressed him by referring to Plaintiff as the N word and rhetorically asking Plaintiff why he couldn't use the N word as he stated the N word and to demoralize, oppress, interfere with and prevent work opportunities for Plaintiff.

213.    As alleged throughout this complaint, but for Plaintiff's race, supervisor Nicole would not have joined Defendant Milan in oppressing, demoralizing and preventing work opportunities for Plaintiff.

214.    As alleged throughout this complaint, but for Plaintiff's race, all Defendants would not have terminated Plaintiff and thereafter placed him in a false light as "agitated" to prevent prospective employers from hiring Plaintiff.

215.    But for Plaintiff's race, Defendants Nicole and Sam would not have ignored Plaintiff's complaints about Defendant Milan's racial harassment of Plaintiff

216.    Based upon information and belief, Defendants Urban Umbrella, Silvercup and GWT had customs and/or policies that fostered unlawful and racist conduct and permitted Defendant Milan to harass, demean and oppress Plaintiff because of his African American race.  Defendant Milan was permitted to relentlessly refer to Plaintiff as the N word with zero accountability or consequence despite Plaintiff's numerous requests for him to stop and numerous complaints to Defendants Sam and Nicole.   Suffering adverse employment actions and witnessing that a co-worker suffered no consequences for racist verbal attacks would deter a reasonable employee from complaining about discrimination.

217.    As a consequence of weekly and daily verbal racist attacks and treatment by Defendant Milan and the supervisors' failure to address or correct Defendant Milan's unlawful behavior, Plaintiff grew anxious, isolated, fearful, helpless and lost an enjoyment for life that impacted his relationships with his family and friends.

218.    Based on the foregoing, Defendants Sam, Nicole and Milan are individually liable to Plaintiff for wrongfully terminating him, pre and post termination retaliation against Plaintiff and depriving Plaintiff of work assignments or opportunities, and fostering unlawful discriminatory conduct pursuant to 42 USC §1981.

219.    Plaintiff therefore seeks back pay, and other remuneration to which he was entitled, punitive and compensatory damages, attorneys fees and costs.

220.    As a result of the discrimination, adverse employment actions, and retaliation, Plaintiff has suffered mental anguish and/or emotional distress from anxiety, lack of sleep, depression, lack of enjoyment of life, feelings of helplessness, and further seeks damages for mental anguish and/or emotional distress.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
**UNLAWFUL AND DISCRIMINATORY TERMINATION BASED ON RACE AND/OR**
**COLOR, IN VIOLATION OF NYS Human Rights Law §296**

221.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

222.    New York State Human Rights Law states in relevant part, "It shall be an unlawful discriminatory practice (a) For an employer…because of an individual's …race…color, national origin, citizenship…to discharge such individual or to discriminate against such individual in compensation or in terms and conditions or privileges of employment.

223.    As alleged throughout this complaint, Plaintiff was verbally attacked at least once every work week during his employment by Defendant Milan who repeatedly and relentlessly referred to Plaintiff as the N word and rhetorically asked Plaintiff, "why can't I use the N word" as he used the N word.

224.    As alleged throughout this complaint Plaintiff reported Defendant Milan's racist conduct towards him numerous times to his supervisors Nicole and Sam.  Other supervisors Jose and Felix in addition to Nicole and Sam witnessed Defendant Milan's use of the N word while referring to Plaintiff.  None of these supervisors intervened or did anything to stop or correct Defendant Milan's racist verbal attacks against Plaintiff.

225.    As alleged throughout this complaint, but for Plaintiff's race or color, Plaintiff would not have been harassed and then discharged on or about June 15, 2022.

226.   As alleged throughout this complaint, Plaintiff suffered mental anguish including but not limited to anxiety, sleeplessness, isolation, helplessness and a lack of enjoyment of life for which he seeks generalized or garden variety mental anguish damages.

227.   Accordingly, Plaintiff seeks back pay, compensatory and punitive damages and attorneys fees pursuant to NYS HRL 296 et seq.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF NYS Human Rights Law §296

228.   Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

229.   The NYS HRL 296 (h) states in relevant part, It shall be an unlawful discriminatory practice…(h) For an employer…to subject any individual to harassment because of an individual's…race, color, national origin, citizenship…or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims.  Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior  terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.  The fact that such individual did not make a complaint about the harassment to such employer…shall not be determinative of whether such employer…shall be liable. Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared."

230.   As alleged throughout this complaint, Defendant Milan harassed and subjected Plaintiff to repeated racist verbal attacks referring to Plaintiff as the N word because of Plaintiff's African American race.

231.    As alleged throughout this complaint Defendant Milan excluded Plaintiff from safety and instructional meetings at the start of the work day by providing instruction exclusively in the Spanish language knowing that Plaintiff's primary and native language was American English Defendant Milan thereby set up Plaintiff to fail at his tasks and placed Plaintiff and his co-workers in danger as they worked as a team to construct scaffolding.

232.    As a result, Defendant Milan discriminated against Plaintiff based on his national origin and/or citizenship as a United States citizen who primarily and only spoke English which was Plaintiff's native language.   Defendant Milan refused to provide safety and construction instructions to Plaintiff even after Plaintiff specifically requested numerous times that he be provided such instructions in his native English language.

233.    Pursuant to NYS HRL §296, any one of Defendant Milan's racist verbal attacks was harassment based on Plaintiff's race and color as incidents of harassment are not required to be severe or pervasive.

234.    Pursuant to NYS HRL 296, any one of Defendant Milan's refusal or failure to provide safety and construction instructions to Plaintiff in the English language was discrimination based on national origin and citizenship of the United States.

235.    As alleged throughout this complaint, Defendant Milan's racist verbal attacks resulted in Plaintiff's loss of work hours, work assignments and ultimately termination of his employment as Defendants Nicole and/or Sam sent Plaintiff home before his work shift ended each time he complained about Defendant Milan's racist verbal attacks.

236.    As alleged throughout this complaint, on or about June 14, 2022 Plaintiff complained to Nicole about Defendant Milan's racist verbal attacks that day referring to Plaintiff as the N word. Nicole acknowledged Defendant Milan's unlawful conduct and told Plaintiff to "give him time."

The next day, on or about June 15, 2022, Nicole sent Plaintiff home early and terminated Plaintiff for complaining about Defendant Milan's racist and unlawful conduct.

237.    As alleged throughout this complaint, Plaintiff suffered general or garden variety mental anguish and damages as a result of Defendant Milan's relentless racist verbal attacks.

238.    Accordingly, Plaintiff seeks back pay, compensatory and punitive damages and attorneys fees and costs pursuant to NYS HRL §296 et seq.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants jointly and severally:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA and the NYLL by failing to pay Plaintiff his overtime wages;

B.  Declaring that Defendants engaged in unlawful employment practices prohibited by FLSA and NYLL by knowingly 1) issuing paychecks to Plaintiff that were returned for insufficient funds and 2) delayed Plaintiffs wage payments in violation of NYLL §191 and 3) withholding Plaintiff's wages for the weeks on or about May 29, 2022 through on or about June 15, 2022; and 4) retaliating against Plaintiff by threatening to and terminating Plaintiff for complaining about Defendants' unlawful pay practices including but not limited to: demanding payment of paychecks returned for insufficient funds; failure to maintain accurate time records for Plaintiff; withholding work assignments; reduction of work hours and unpaid overtime wages in violation of FLSA §215(a) and/or NYLL §215.

C.  Awarding 100% liquidated damages pursuant to NYLL §198 for Plaintiff's delayed wages in violation of NYLL §191; and

D.  Awarding reimbursement to Plaintiff of penalties and costs imposed by Plaintiff's banking institution and/or check cashing business as a result of depositing or "cashing" Defendants'

paychebs that were returned for insufficient funds; and

E. Declaring that Defendants engaged in unlawful employment practices prohibited by the NYLL by failing to give proper wage notice and accurate wage statements to Plaintiff; and

F. Awarding damages to Plaintiff for all unpaid or underpaid overtime wages due under the FLSA and the NYLL;

G. Awarding damages to Plaintiff as a result of Defendants' failure to provide proper wage notice and accurate wage statements for a maximum amount of $5,000 each under the NYLL;

H. Awarding Plaintiff double or 100% liquidated damages of underpayment or unpaid amounts of overtime wages as a result of Defendants' willful failure to pay overtime wages under FLSA and NYLL;

I. Awarding FLSA §215, §216 and/or NYLL §215 retaliation damages including: back pay, front pay in lieu of reinstatement, lost wages, liquidated damages, compensatory, mental anguish / general emotional distress and punitive damages, attorneys fees and costs, and pre and post judgment interest; and

J. Awarding Plaintiff NYC Sick Leave Law damages for Plaintiff's accrued and unused sick hours during the relevant time period of his employment;

K. Awarding Plaintiff attorneys' fees and costs pursuant to FLSA, NYLL and NYC Sick Leave Law; and

L. Awarding Plaintiff pre-judgment interest of nine per cent per annum (9%) pursuant to NYLL §198 and the New York Civil Practice Law and Rules §§ 5001- 5004; and

M. Awarding Plaintiff post-judgment interest pursuant to the New York Civil Practice Law and Rules § 5003

N.  Declaring Defendants' conduct was unlawful and liable under 42 USC §1981 based on Plaintiff's race for wrongful and discriminatory termination, hostile work environment and pre and post termination retaliation for engaging in protected activities within the meaning of 42 USC §1981; and

O.  Declaring Defendants' conduct was unlawful and liable under NYS HRL §296 et seq. based on Plaintiff's race, color, national origin, citizenship for wrongful and discriminatory termination, hostile work environment and pre and post termination retaliation for engaging in protected activities within the meaning of the NYS HRL.

P.  Declaring Defendants' unlawful conduct set forth *supra* caused Plaintiff mental anguish and/or emotional distress: and

Q.  Awarding i) actual, ii) compensatory, iii) punitive, iv) garden variety mental anguish / emotional distress damages, v) back pay, vi) prospective pay, vii) and any other remuneration that Defendants interfered with and prevented Plaintiff from obtaining; viii) attorneys fees and costs pursuant to 42 USC §1981 et seq. and or NYS HRL 296 et seq., ix) statutory pre and post judgment interest; and

R.  Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
         January 18, 2023

                              **NISAR LAW GROUP, P.C.**
                              *Attorneys for Plaintiff*

BY:     _____
        Susan Ghim, Of Counsel
        One Grand Central Place
        60 East 42nd St., Ste. 4600
        New York, NY 10165
        Email: sghim@nisarlaw.com
        Ph: (646) 889-1011